UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BCS INSURANCE COMPANY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | 08 C 6342 |
| | ) | |
| INDEPENDENCE BLUE CROSS, et al., | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the petition of Plaintiff BCS Insurance Company ("BCS") to compel arbitration of a bad faith claim against Defendant Independence Blue Cross ("IBC"). For the following reasons, the petition is granted.

## BACKGROUND

The court has jurisdiction on the basis of diversity of citizenship; BCS is an Ohio corporation with its principal place of business in Illinois and IBC is a Pennsylvania corporation with its principal place of business in Pennsylvania. *See* 28 U.S.C. § 1332. Moreover, the amount in controversy exceeds $75,000.

According to the allegations contained in the petition, BCS issued IBC a Directors and Officers Liability Insurance Policy effective July 1, 2001, to July 1,

2002.[1] During the period of coverage, a third party sued IBC for alleged improper negotiation and performance of contracts.[2] The lawsuit eventually settled; afterwards, IBC filed a claim with BCS seeking indemnity for its incurred defense expenses. BCS subsequently denied coverage of IBC's claim. In the insurance policy at issue, the parties agreed to binding arbitration. The arbitration provision states in relevant part:

> Any controversy arising out of or relating to this Policy or the breach thereof shall be settled by binding arbitration in accordance with the rules but not the authority or jurisdiction of the American Arbitration Association (herein "AAA") then in effect.
> ...
>
> Arbitration shall take place in Chicago, Illinois unless otherwise agreed to by the parties.

After learning that BCS refused to cover the claim, IBC issued notice on September 29, 2008, demanding arbitration of the coverage claim and stated its intent to assert a claim against BCS for bad faith. In its demand for arbitration, IBC seeks defense expenses in the amount of $7,427,136.04, including interest, attorney fees, and costs. On October 24, IBC served BCS with a revised demand for arbitration and

---

[1] The policy covered Directors and Officers Liability, Insurance Company Errors and Omissions, and Managed Care Organization Liability Insurance.

[2] The suit was filed in the United States District Court for the Eastern District of Pennsylvania.

identified its arbitrator.³ BCS later inquired whether the bad faith claim would be pursued in court or as part of the arbitration, and IBC expressly stated its intent to pursue the bad faith claim in Pennsylvania state court.

On November 5, BCS filed the instant petition to compel arbitration of the bad faith claim, perceiving it to be a controversy arising out of the policy and thus falling within the scope of the arbitration clause. It seeks an order that IBC resolve the bad faith claim as part of the pending arbitration. IBC opposes BCS's petition on the basis that the issues raised in the bad faith claim are separate and distinct and therefore it does not arise out of the policy.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that an arbitration clause in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. It is axiomatic that arbitration is a favored means of resolving disputes, and the FAA has established a policy favoring arbitration. *See Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.* 174 F.3d 907, 909 (7th Cir. 1999). Courts liberally construe contractual language regarding arbitration and resolve doubt

---

³The September 29 letter did not to identify an arbitrator in the Demand for Arbitration.

in favor of arbitrability. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

A party contesting the submission of a claim to arbitration must prove that the presumption of arbitrability does not apply. *See Int'l Union Operating Eng'rs, Local Union 103 v. Ind. Constr. Corp.*, 13 F.3d 253, 255-56 (7th Cir. 1994). When deciding whether a particular issue is arbitrable, the court turns to general principles of contract interpretation, as "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 1353 (1960). A claim will be deemed arbitrable if an arbitration clause is capable of any interpretation that a claim is covered. *See Ind. Constr. Corp.*, 13 F.3d at 255-56. With these principles in mind, we turn to the petition.

## DISCUSSION

### I. Scope of the Arbitration Agreement

BCS asserts that IBC's bad faith claim falls within the scope of the parties' arbitration agreement and should be resolved by arbitration. The arbitration provision indicates that the parties agreed to arbitrate "any controversy arising out of or relating to this Policy or breach thereof." Arbitration clauses containing this "arising out of or relating to" language "have been characterized as extremely broad and capable of an expansive reach." *Kiefer Specialty Flooring, Inc.*, 174 F.3d at 910. BCS contends that

a court should compel arbitration if there is a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Both parties acknowledge the presence of a written agreement with regard to the coverage dispute. In addition, it is undisputed that IBC refuses to arbitrate the bad faith claim. At issue is whether the bad faith claim is within the scope of the arbitration agreement.

IBC first argues that the interpretation of the arbitration provision and bad faith claim is governed by Pennsylvania law. The insurance agreement is silent as to a choice of law. However, IBC contends that Pennsylvania law applies because IBC is a Pennsylvania policyholder filing a bad-faith claim for conduct that allegedly occurred in Pennsylvania. Furthermore, it avers that the policy was delivered in Pennsylvania and the underlying coverage dispute arises out of a dispute that occurred in Pennsylvania. For purposes of the petition, BCS takes no position as to whether Pennsylvania law applies to the underlying contract dispute and reserves any right to challenge the applicability of Pennsylvania law to any part of the dispute—including the bad faith claim.

Under the perception that Pennsylvania law applies, IBC asserts that the court should not compel arbitration because Pennsylvania state court is the only forum available to resolve the bad faith dispute. *See Nealy v. State Farm Mut. Auto Ins. Co.*,

695 A.2d 790, 794 (Pa. Super. Ct. 1997) (concluding that original jurisdiction to decide issues of 42 Pa.C.S.A. § 8371[4] bad faith is exclusive to the trial courts and that arbitration panels do not have jurisdiction to decide bad faith claims pursuant to § 8371).  In *Nealy*, the court decided that a bad faith claim brought under the Pennsylvania bad faith statute between a policyholder and an insurer is separate and distinct from any claim under the policy.  *Id.* at 794.  The court held that a policyholder is required to litigate its bad faith claim in court rather than to submit it to arbitration, despite an arbitration clause within the policy.  *Id.*  IBC's position is that the bad faith claim lodged against BCS qualifies as separate and distinct under *Nealy* because it involves BCS's behavior.  It claims that such behavior is not contemplated by the policy and is outside of the scope of arbitration.

Responding to the proposition that *Nealy* controls, BCS cites to cases in the Third Circuit, which, it argues, interpret and clarify *Nealy's* effect on bad faith claims in federal court.  Contrary to IBC's contention, BCS argues that a § 8371 claim does arise under the policy and is within the scope of arbitration.  In support, BCS asserts that while *Nealy* found that § 8371 claims are separate from the underlying contractual

---

[4] 42 Pa.C.S.A. § 8371 regulates bad faith actions and permits the court to award interest from the time the date of the claim was made by the insured in an amount equal to prime rate of interest plus 3%; award punitive damages against the insurer; and assess court costs and attorney fees against the insurer.

insurance claim, "the issue of whether a Section 8371 cause of action arises under the insurance policy is an open question." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 529 (3rd Cir. 1997). *Polselli* reasoned that the bad faith claim was dependent on the existence of the predicate contract. *Id.* at 529-30. It further explained that the insurer's duty of good faith is predicated on the fiduciary relationship created at the contract's inception. *Id.* at 530.

BCS also disputes *Nealy's* application on the basis that it only considered whether a § 8371 claim was arbitrable under the Pennsylvania Uniform Arbitration Act and not under the FAA. *See Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 627 n.3 (3rd Cir. 2003). *Brayman* rejected the argument that Pennsylvania law requires § 8371 claims to be heard by a judge. *Id.* It held that the *Nealy* decision directly conflicted with the FAA, and therefore the FAA preempted it. *Id.* The court found that the bad faith claim was subject to arbitration.

The FAA prevents state law from undermining parties' contractual agreement to arbitrate. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58-59, 115 S. Ct. 1212, 1216-17 (1995) (upholding arbitration of a punitive damages claim under a contractual arbitration provision, despite New York state law allowing only courts—and not arbitrators—to award punitive relief). "When parties agree to arbitrate all questions arising under a contract, the FAA supercedes state laws lodging primary jurisdiction in

another forum, whether judicial or administrative." *Preston v. Ferrer*, — U.S. —, 128 S. Ct. 978, 987 (2008). IBC's contention against arbitrating the bad faith claim is that § 8371 solely vests jurisdiction in Pennsylvania state courts and that the nature of its bad faith claim is not within the scope of arbitration. BCS argues that bad faith claims are arbitrable by virtue of the breadth of the underlying arbitration provision and that the bad faith claim would not arise but for the contract. Since the language "any controversy arising out of or relating to this Policy" contained in the parties' arbitration provision contemplates any question that may arise, the court finds it broad enough to encompass IBC's bad faith claim. Therefore, IBC fails to overcome the strong presumption of arbitrability and the claim will be resolved in arbitration.

## II. The McCarran-Ferguson Act

Next, IBC opposes BCS's petition to compel arbitration of the bad faith claim on the grounds that even if the claim could be construed to be within the scope of the arbitration provision, then the McCarran-Ferguson Act provides that § 8371 preempts the FAA. The McCarran-Ferguson Act states, in relevant part, that "[N]o Act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." *See* 15 U.S.C. § 1012(b). IBC asserts that § 8371 is a statute enacted for the purpose of regulating insurance and that the FAA

does not specifically relate to the business of insurance, therefore the FAA is preempted by the Pennsylvania law.

BCS opposes IBC's contention that the McCarran-Ferguson Act preempts the FAA on the basis that § 8371 does not regulate the business of insurance. We assess whether the federal statute specifically relates to the business of insurance; second, inquire if the state statute was enacted for the purpose of regulating the business of insurance; and finally, whether applying the federal statute would invalidate, impair, or supercede the state statute. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1040-41 (7th Cir. 1998).

IBC asserts that § 8371 was enacted for the purpose of regulating the business of insurance. The Pennsylvania statute is entitled "Actions on insurance policies," which regulates the amount of damages a policyholder can collect from an insurer who refuses to cover or settle a claim in bad faith. By requiring a court to address bad faith claims, IBC perceives that the statute was enacted to regulate the insurance business.

BCS asserts that IBC successfully argued against the proposition that § 8371 was intended to regulate insurance and is now precluded from claiming that § 8371 regulates the business of insurance.

The court addresses whether IBC is precluded from arguing § 8371 regulates the business of insurance. For collateral estoppel to bar a party from asserting a claim or

defense, the following elements must be satisfied: (1) the issue is the same as one involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was necessary to the prior judgment; and (4) the party against whom preclusion is invoked was fully represented in the prior action. *Washington Group, Int'l, Inc. v. Bell, Boyd & Lloyd, LLC*, 383 F.3d 633, 636 (7th Cir. 2004). BCS argues that IBC previously litigated this same issue in *Tutolo v. Independence Blue Cross*, 1999 WL 274975 *2-3 (E.D. Pa. 1999) (holding that under the McCarran-Ferguson Act, § 8371 does not regulate the business of insurance). In *Tutolo*, the court considered whether the plaintiff's bad faith claim was preempted by ERISA. In doing so, it analyzed whether § 8371 was enacted for the business of insurance. IBC prevailed under its contention that the McCarran-Ferguson Act was inapplicable because the bad faith statute does not serve to transfer or spread the policyholder's risk and is not an integral part of the insurer-insured relationship.

Based on the court's ruling in *Tutolo*, IBC is precluded from litigating whether § 8371 regulates the business of insurance. In its surreply, IBC denies that collateral estoppel applies on the grounds that *Tutolo* is legally distinct, therefore BCS fails to establish any identical issue.[5] However, this case asks the court to determine the issue

---

[5]IBC contends that *Tutolo* considered whether § 8371 fell within ERISA's preemption exemption in the context of an IBC health benefit plan.

of whether Pennsylvania's bad faith statute regulates the business of insurance. Since the *Tutolo* court sufficiently addressed this same issue, which was necessary to determine the case in IBC's favor, collateral estoppel is appropriate. As such, IBC is precluded from arguing that § 8371 regulates the business of insurance.

## CONCLUSION

Based on the foregoing, BCS's petition to compel arbitration of the bad faith claim is granted.

Charles P. Kocoras
United States District Judge

Dated:  January 15, 2009